# In the United States Court of Federal Claims

No. 14-233C
(Filed:  June 26, 2014)
**\*Order originally filed under seal on June 5, 2014**

|  |  |
|---|---|
| ARKRAY USA, INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant, | ) |
|  | ) |
| and | ) |
|  | ) |
| ABBOTT DIABETES CARE | ) |
| SALES CORPORATION, | ) |
|  | ) |
| Defendant-Intervenor. | ) |

**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S
SECOND MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**

Pending before the court is plaintiff's second motion to complete the administrative record.[1]  Motion, ECF No. 58.  This court granted-in-part plaintiff's

---

[1] This bid-protest case involves the decision of the Defense Health Agency ("DHA" or "the agency") to award a blanket purchase agreement ("BPA") for the purchase of self-monitoring blood glucose system ("SMBGS") test strips ("test strips") to Abbott Diabetes Care Sales Corporation ("Abbott" or "defendant-intervenor").  ARKRAY contends, inter alia, that Abbott's bid did not comply with the solicitation's requirements that the offeror have in place a Federal Supply Schedule for its blood glucose meters ("meters"), and that the offeror's meters comply with the Trade Agreements Act ("TAA").  Where applicable, the TAA generally prohibits the federal government from procuring products from a foreign country that has not signed a

previous motion to complete the administrative record with various materials that should have been included under Appendix C, Paragraph 22 ("Paragraph 22") of the Rules of the United States Court of Federal Claims ("RCFC").  See Order, ECF No. 44.  Specifically, the court held that Paragraph 22 presumptively included as part of the administrative record any pre-award communications between Abbott and DHA, as well as communications between the agency and Abbott made during (or in anticipation of) plaintiff's protest before the GAO.[2]  Id. at 11-12.  Accordingly, the government added several pages of handwritten notes from a September 2013 meeting between DHA and Abbott, as well as post-award materials related to a November 20, 2013 meeting concerning Abbott's performance during the pendency of the GAO protest.  Included among these materials was an e-mail that indicated that after plaintiff filed its GAO protest, Abbott and DHA had entered into a "Joint Defense Agreement" ("JDA") to allow

---

reciprocal agreement on government procurement.  See 19 U.S.C. § 2512.

On September 27, 2013, ARKRAY USA, Inc. ("ARKRAY" or "plaintiff") filed a protest with the Government Accountability Office ("GAO"), in which it challenged the selection of Abbott for the formulary.  Arkray USA, Inc., 2014 CPD ¶ 90 (Comp. Gen. Mar. 5, 2014).  On September 30, 2013, ARKRAY withdrew its protest after being informed that a final decision had not yet been made with regard to the formulary.  On November 7, 2013, the DHA Director approved the P&T committee's recommendations (as modified by the Beneficiary Advisory Panel ("BAP")), Administrative Record ("AR") 644, and the government's Contracting Officer signed the BPA with Abbott on November 12, 2013, AR 692.  ARKRAY re-filed its protest with the GAO on November 25, 2013.  AR 1-112.  GAO denied the protest on March 5, 2014.  AR 1834.

[2] In its order, the court also noted that even if the post-award materials were not "core documents" under Paragraph 22, the materials were necessary for effective judicial review.  The court noted that plaintiff had identified considerable evidence that suggested "that there were questions involving Abbott's TAA-compliance that should have led to further inquiry by the government before award at the time bidding closed."  Order, ECF No. 44 at 14.

2

counsel for DHA and Abbott to exchange materials in defense of the award decision without waiving any privileges.

Following a joint status conference on May 6, 2014, the court ordered the government to file a copy of the JDA, as well as a copy of certain production schedules for TAA-compliant meters that were referenced in a pre-award communication between Abbott to DHA.  Because the government was unable to produce the schedules identified in that e-mail, the government filed a declaration from a DHA employee who explained the reasons that DHA concluded that Abbott would be able to produce a sufficient quantity of TAA-compliant meters.

On May 21, 2014, plaintiff moved to supplement the administrative record with "Defense Materials" exchanged between DHA and Abbott pursuant to the JDA.  Motion, ECF No. 58.  The court subsequently ordered the government to produce, for in camera review, all e-mails, e-mail attachments, or other materials exchanged under the JDA that contained factual information bearing on issues in dispute.  See Order, ECF No. 61; Order, ECF No. 65 (clarifying scope of prior order).  For materials that solely addressed legal strategy or draft pleadings, the court required the government to provide a privilege log that expressly stated the claim of privilege and described the nature of the communications and documents withheld.[3]  See Order, ECF No. 65.

---

[3] When it submitted the requested materials on May 28, 2014, the government acknowledged that it had, again, inadvertently withheld certain pre-award materials and requested leave to add those materials to the record.  See Def.'s Resp. to Pl.'s 2d Mot. to Suppl. 21 n.6, ECF No. 67. The court ordered the government to immediately produce those materials to plaintiff and add them to the administrative record.  Order, ECF No. 69.

The court has reviewed the parties' arguments and the materials submitted by the government, and for the reasons explained below, plaintiff's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.    BACKGROUND

### a.   Standard of review

As explained in the court's prior order, "a distinction must be drawn between supplementing the administrative record and completing the record." Order, ECF No. 44 at 9. Where a party seeks to add to the record "materials that were generated or considered by the agency during the procurement and decisionmaking process, such a request is properly viewed as a request to complete . . . the administrative record . . . ." Id. at 9-10. In addition, and as previously explained:

> This court's rules include a non-exhaustive list of "core documents" relevant to a bid protest. Joint Venture of Comint Sys. Corp. v. United States, 100 Fed. Cl. 159, 166 (2011). Among these core documents are . . . [1]correspondence between the agency and the protester, awardee, or other interested parties relating to the procurement; [2]records of any discussions, meetings, or telephone conferences between the agency and the protester, awardee, or other interested parties relating to the procurement; . . . and [3] documents relating to any stay, suspension, or termination of award or performance pending resolution of the bid protest. See RCFC Appendix C ¶ 22. Documents such as these "presumptively qualify for inclusion in the Administrative Record." Dyncorp Int'l LLC v. United States, 113 Fed. Cl. 298, 303 (2013).

Id. at 9. The court has discretion to determine whether previously excluded Paragraph 22 materials should be added to the administrative record. See Allied Tech. Grp., Inc. v. United States, 92 Fed. Cl. 226, 230 (2010) (noting that Paragraph 22 "employs the words 'may' and 'as appropriate'"). By contrast, supplementation of the record with non-core

4

documents is only appropriate when necessary for judicial review—such as where the record raises serious questions concerning the rationality of the agency action. Order, ECF No. 44 at 10, 15 (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1341 (Fed. Cir. 2001); Office Depot, Inc. v. United States, 94 Fed. Cl. 294, 298 (2010)).

### b. Materials exchanged pursuant to the JDA

On May 28, 2014, the government submitted to the court nine groups of documents that it argues should not be included as part of the record. These materials include (a) discussions between Abbott and DHA leading up to the JDA; (b) e-mails discussing the GAO record; (c) discussions between DHA and Abbott concerning marketing and sales efforts during the pendency of plaintiff's protest before this court; (d) discussions concerning Abbott's sales to the government at the new BPA price during the pendency of plaintiff's protest before this court; (e) spreadsheets and slide decks concerning Abbott's production capacity and schedules for achieving TAA-compliance; (f) handwritten notes from a September 19, 2013 telephone call among DHA personnel related to the recommendation that Abbott be the sole BPA recipient; (g) a request by Abbott to DHA to add certain materials to the administrative record; (h) communications by DHA's contracting officer directing the agency not to take steps to implement the BPA during the instant litigation; and (i) additional materials concerning Abbott's performance during the instant litigation.

## II.  DISCUSSION

The government and defendant-intervenor contend that none of the aforementioned materials should be part of the administrative record for essentially two reasons.  First, they argue that because most of the materials were not before the agency at the time Abbott was awarded a BPA, none of the materials are properly part of the administrative record.  Second, they assert that these materials are protected by the work product doctrine and attorney client privilege.  Plaintiff contends that all of these materials are properly part of the administrative record, are necessary for effective judicial review, and that the government has waived any privilege by sharing the materials with Abbott.

The court has reviewed all of the materials supplied for its review for the purpose of determining whether the administrative record is complete or if the documents are necessary for effective judicial review.  For the reasons explained below, the court **ORDERS** the government to complete the administrative record by adding (1) the two slide decks found in Tab E and (2) the handwritten notes included in Tab F.  The court agrees with the government and defendant-intervenor, however, that the remaining materials should be excluded as outside the scope of Paragraph 22 and/or unnecessary to conduct effective judicial review.

> **a. Tab E slide decks constitute documents relating to any stay, suspension, or termination of award or performance pending resolution of the bid protest, and are otherwise necessary for effective judicial review**

Tab E contains (1) 16 pages of spreadsheets, dated August 26, 2013, that appear to pertain to Abbott's production capacity; (2) a 27-page slide deck dated November 20,

2013, titled "2013 TRICARE SMBGS Category Implementation"; and (3) a 25-page slide deck dated November 23, 2013, also titled "2013 TRICARE SMBGS Category Implementation."[4]  Counsel for the government represents that these documents were never provided to DHA staff, and were only provided to agency counsel on May 12, 2014.  Although these documents are not specifically addressed in their briefs, the court understands the government and defendant-intervenor to argue that these materials are not properly part of the administrative record because they were not submitted to the agency before DHA decided to award the BPA to Abbott.

Having reviewed Tab E in camera, the court concludes—for the same reasons explained in its prior order—that the slide decks constitute documents relating to any stay, suspension, or termination of award or performance pending resolution of a pending or anticipated bid protest, and are presumptively part of the record.  Moreover, and as explained below, these documents are a continuation of a pre-award discussion between Abbott and the government as to TAA-compliance and are necessary to allow for effective judicial review.

On September 16, 2013, DHA staff had a teleconference with Abbott representatives in which they discussed the process Abbott promised to have to provide TAA-compliant meters to beneficiaries.  AR 2164.  On September 19, 2013—prior to awarding the BPA to Abbott—Abbott represented to the government that it would

---

[4] The court notes that these slide decks are similar, but not identical, to the slide deck dated November 23, 2013 that appears in the administrative record at Tab 195a.  Presumably, these materials were intended to be shared with the government during the meeting held on November 20, 2013.

provide "an updated TAA compliant meter product schedule . . . shortly. . . ." AR 2093. Abbott reportedly provided that schedule after the award decision during a meeting held with the government on November 20, 2013, AR 2168—however, the government has been unable to provide that schedule to the court. Unlike the slide deck from that meeting that is already part of the record, the slide deck in Tab E that is dated November 20, 2013 contains a schedule for producing meters. Particularly given the fact that the government has been unable to produce a copy of the production schedule that DHA employees received prior to making the award decision, including these documents as part of the administrative record is necessary to determine whether the agency rationally concluded that Abbott could comply with the TAA requirement. Accordingly, these documents shall be added to the administrative record.

### b.  Tab F materials constitute pre-award evaluations of Abbott's offer

Tab F includes (1) an internal DHA e-mail, dated September 16, 2013, titled "notes from Abbott meeting"; and (2) two pages of handwritten notes from a September 19, 2013 telephone call among DHA personnel, in which they discussed the recommendation that Abbott be the sole BPA recipient. See Def.'s Sealed Resp. to Mot. to Suppl. 19 n.5, ECF No. 67 (May 28, 2014). Although the government concedes that the DHA e-mail should have been included in the record, the government excluded the handwritten notes because they post-dated the recommendation that Abbott receive a BPA—apparently reasoning that they were post-award decisions. In the alternative, the government contends that the notes "reflect comments that were made by DHA to

counsel in the course of the litigation" and are therefore subject to the attorney-client privilege. Id. at 19.

After reviewing the handwritten notes, the court concludes that these notes are consistent with materials constituting the "agency's evaluations of the protester's, awardee's, or other interested parties' offers, proposals, or other responses to the solicitation, including supporting documentation." RCFC App'x C ¶ 22(n). Moreover, to the extent that these records might have been subject to the attorney-client privilege, the government waived that privilege when it placed nearly identical comments in the administrative record. These notes are virtually identical to notes already in the record at AR 2049-2052(b) and should also be included in the record.

### c. The remaining materials have been properly excluded from the administrative record[5]

In light of the government's repeated difficulty in completing the record, coupled with the agency's unusual decision to enter into a JDA with Abbott, the court appreciates plaintiff's concern that the JDA could be used to withhold evidence demonstrating the agency's alleged bias in favor of Abbott. Having reviewed the materials and privilege log in camera, however, the court is satisfied that no such evidence is being withheld, and

---

[5] The court has serious doubts about the appropriateness of a joint defense agreement in any case involving record review of a procurement decision because the government's interests, though at times aligned with the defendant-intervenor's, do not always require defending the agency's award decision. See, e.g., Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1379, 1381 (Fed. Cir. 2012) (allowing original awardee to challenge Army's decision to undertake corrective action). Nonetheless, the court is tasked only with ensuring a complete record. After reviewing all of the factual materials exchanged between the government and Abbott, as well as the privilege log, it is satisfied that all of the materials belonging in the administrative record have been or will be added to the record and provided to plaintiff.

that the remaining materials fall outside the scope of Paragraph 22 and are not necessary to conduct effective judicial review.  Accordingly, to the extent that plaintiff seeks to add these records to the administrative record, that request is **DENIED**.

## III.   CONCLUSION

For the foregoing reasons, plaintiff's motion to complete/supplement the administrative record is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge