# In the United States Court of Federal Claims

No. 14-233C
(Filed:  September 9, 2014)*
*Opinion originally filed under seal on August 27, 2014

| | |
|---|---|
| ARKRAY USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ABBOTT DIABETES CARE SALES CORPORATION, <br><br> Defendant-Intervenor. | **Bid Protest; Federal Supply Schedule; FAR 8.405–3; Blanket Purchase Agreement; Necessity to hold FSS contract; Balance of Equities Weighs in Favor of Injunction** |

*Jonathan A. DeMella*, Seattle, WA, for plaintiff.

*Sonia M. Orfield*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Assistant Attorney General, and *Robert E. Kirschman, Jr.*, Director, for defendant.

*Donna L. Yesner*, Washington, DC, for defendant-intervenor.  *Stephen E. Ruscus*, Washington, DC, of counsel.

**OPINION AND ORDER**

**FIRESTONE**, *Judge*.

On June 18, 2014, the court issued an opinion remanding to the Defense Health

Agency ("DHA") its decision to award to Abbott Diabetes Care Sales Corporation

("ADCSC" or "defendant-intervenor") a Blanket Purchase Agreement ("BPA") for the self-monitoring blood glucose system test strips ("test strips") that are provided to TRICARE beneficiaries under the uniform formulary ("the formulary" or "UF").[1] ARKRAY USA, Inc. v. United States, No. 14-233C, 2014 WL 2903399 (Fed. Cl. June 26, 2014). The remand was intended to give the DHA Contracting Officer the opportunity, in the first instance, to determine whether ADCSC could properly hold itself out as having a Federal Supply Schedule ("FSS")[2] contract as required by the solicitation. Under the terms of the solicitation, offerors were required to "have an existing FSS

---

[1] The court found that a remand was appropriate based in part on two cases in which an offeror was permitted to rely on the capabilities of its parent or other corporate affiliates to meet solicitation requirements. ARKRAY, 2014 WL 2903399, at *7 (citing Femme Comp Inc. v. United States, 83 Fed. Cl. 704, 744-49 (2008) and T & S Prods., Inc. v. United States, 48 Fed. Cl. 100, 109-12 (2000)).

The TRICARE uniform formulary is the approved list of pharmaceutical agents that must be available to eligible beneficiaries under the TRICARE pharmacy benefits program. See generally Coal. for Common Sense in Gov't Procurement v. United States, 576 F. Supp. 2d 162, 164-65 (D.D.C. 2008) (describing TRICARE pharmacy benefits program). Pharmaceutical agents—in this case, test strips—may be added to the UF based on their relative clinical and cost-effectiveness as determined by the Pharmaceutical and Therapeutics ("P&T") Committee. Regulations governing the selection of pharmaceutical agents are codified at 32 C.F.R. § 199.21.

As explained in the court's prior opinion, the test strips manufactured by Abbott were determined to be the most cost-effective of seven offerors, and were therefore recommended by the P&T Committee to be the sole test strip to be available on the formulary. ARKRAY, 2014 WL 2903399, at *4. ARKRAY's test strips had been found to be of equal clinical effectiveness, and were the second most cost-effective among the seven offerors. See AR 571.

[2] FSS contracts, which are generally established with the General Services Administration ("GSA"), obligate contractors "to provide supplies and services at stated prices for given periods of time on the FSS, permitting federal agencies to buy supplies directly from the FSS, rather than holding a publicly-advertised full and open competition for every individual requirement." Kingdomware Techs., Inc. v. United States, 107 Fed. Cl. 226, 231 (2012), aff'd, 754 F.3d 923 (Fed. Cir. 2014). GSA can delegate its authority to establish FSS contracts to other agencies, and the Department of Veterans Affairs ("VA") has been delegated authority to procure medical supplies under its own FSS program. See 48 C.F.R. § 8.402(a).

2

Contract for any pharmaceutical agent(s) quoted . . . at the time the quote is submitted, and at the time the [BPA] is executed." AR 118, 225. It is not disputed that ADCSC did not and does not have an FSS contract. The government argued, however, that ADCSC was authorized to rely on the FSS contract held by ADCSC's affiliate, Abbott Laboratories Inc. ("ALI"), to meet the requirements of the solicitation. On remand, the Contracting Officer was charged with determining whether ADCSC could hold itself out as having an FSS contract by virtue of its relationships with other Abbott-affiliated entities. On July 7, 2014, the DHA Contracting Officer issued a decision finding that ADCSC could properly hold itself out as having an FSS contract and therefore concluded that ADCSC was entitled to keep the BPA for the subject test strips.

The court has reviewed the Contracting Officer's July 7, 2014 decision and, after additional briefing and argument, the court concludes that the Contracting Officer's decision to proceed with the BPA award to ADCSC was arbitrary and capricious because ADCSC does not have an FSS contract as required by the solicitation and FAR 8.405–3. For the reasons explained below, the court concludes that ARKRAY's request for a permanent injunction setting aside the BPA award to ADCSC for test strips should be **GRANTED**.

I.   **BACKGROUND**

The background facts surrounding this case were set forth in detail in the court's June 26, 2014 decision and are not repeated here. At the core of the remaining dispute is whether ADCSC is eligible to receive a BPA under FAR 8.405–3 when it does not hold an FSS contract. FAR 8.405–3 discusses the procedures for establishing and using BPAs

created against an FSS contract. See 48 C.F.R. § 8.403(b) (procedures in subpart 8.4 apply to "BPAs established against Federal Supply Schedule contracts."). These are BPAs that "[o]rdering activities [such as DHA] may establish . . . under any [FSS] contract to fill repetitive needs for supplies or services." 48 C.F.R. § 8.405–3(a)(1). The regulation further states that "[o]rdering activities shall establish the BPA <u>with the schedule contractor(s)</u> that can provide the supply or service that represents the best value." Id. (emphasis added). Consistent with this regulation, the solicitation in this case stated that companies submitting bids for the subject BPA "must have an existing FSS Contract for any pharmaceutical agent(s) quoted in this UFBPA at the time the quote is submitted, and at the time the UFBPA is executed." Administrative Record ("AR") 118, 225. The solicitation further provided that in the event that the offeror's "existing FSS Contract . . . terminates for any reason . . . this UFBPA automatically expires." AR 225.

  As noted, it is undisputed that ADCSC—the company that submitted the bid to DHA for the test strips—is not, itself, a party to an FSS Contract. Instead, the FSS contract that offers the subject test strips is held by an ADCSC affiliate—Abbott Laboratories Inc.—under FSS contract number V797P-2032D. On remand, the Contracting Officer undertook an evaluation of ALI's FSS contract and ADCSC's rights under that contract. According to the materials provided in the newly supplemented Administrative Record, the Contracting Officer (1) researched the websites of the VA, ALI, and Abbott Diabetes Care, Inc. ("ADCI"); (2) reviewed ALI's offer to the VA and subsequent FSS contract (i.e., V797P-2032D); and (3) solicited performance assurances and information concerning ADCSC's legal relationships with ALI and other Abbott-

4

affiliated companies from Duncan Williams, the ADCSC vice-president who signed ADCSC's BPA bid.  In addition, the Contracting Officer received a declaration from Stephanie Organ, the ALI employee who executed ALI's FSS contract with the VA.

Based on his review of the aforementioned websites, the Contracting Officer concluded that multiple entities within the Abbott family of companies work together to manufacture and sell the test strips at issue in this case.  AR 2226.  The Contracting Officer noted that ADCSC's bid listed the same FSS contract number and same corporate point of contact (with the same contact information) as was associated with ALI's FSS contract in the VA Contract Catalog Search Tool available on the VA website.  Id.  The Contracting Officer also noted that ADCI manufactures and holds the trademarks for some of the test strips sold by ADCSC, which is a wholly-owned subsidiary of ADCI. Id.  The Contracting Officer concluded, based on this evidence, that there was a "joint involvement in the sale of diabetes products."  Id.

In reviewing ALI's FSS Contract, the Contracting Officer determined that it was clear that ALI's affiliates—rather than ALI itself—are responsible for providing the products under ALI's FSS contract.  AR 2226-27.  For example, a letter accompanying ALI's FSS offer listed two of ALI's corporate affiliates, Abbott Point of Care ("APOC") and ADCSC/ADCI, as supplying certain products through ALI's FSS contract.  AR 2230. The Contracting Officer also noted that two provisions of ALI's FSS contract authorized Duncan Williams—the individual who signed ADCSC's bid—to also submit quotes under ALI's FSS contract.  AR 2226.  The FSS contract authorizes any

> . . . Divisional Vice President . . . or Manager or any Administrator of any one of Contracts, Pricing, Marketing; Sales or Commercial Operations; or any Divisional Government Sales Manager . . . to quote prices and tender bids, and to enter into contracts for the sale of any products or services of [ALI] to, and with, any and all customers of [ALI], including specifically the United States and any of its offices, agencies or departments, having full authority in their discretion as to prices, terms, conditions, warranties, or any other provisions necessarily relating to said bids and contracts.

AR 2232. The FSS also expressly lists Mr. Williams as an "authorized negotiator," who is "authorized to negotiate with the Government in connection with this request for proposals or quotations[.]" AR 2248.

The Contracting Officer noted that Duncan Williams' letter and the attached declaration from Stephanie Organ, the Senior Manager of Contracts & Pricing at ALI, reconfirmed that ADCSC was authorized to submit a BPA quote under ALI's FSS contract. AR 2248. In his letter, Mr. Williams explained that Abbott Laboratories is the parent company of ALI, APOC, and ADCI, and that ADCSC is a wholly-owned subsidiary of ADCI.[3] AR 2375-76. Further, Mr. Williams explained that ALI does not make products, but instead acts as a "trading company" or "contracting agent" for other Abbott Laboratories companies, including ADCI/ADCSC and APOC. In this connection, Mr. Williams explained that when ALI's FSS Contract V797P-2032D was negotiated, the

---

[3] Specifically, Mr. Williams stated:

> Pursuant to a corporate restructuring, Abbott Diabetes Care Inc. formed its own trading company, ADC[SC], a wholly owned subsidiary of Abbott Diabetes Care Inc., responsible for sales of products manufactured by Abbott Diabetes Care Inc. However, during a transition period following the restructuring, ALI continued to contract with certain customers of ADC[SC], including government customers. ALI no longer contracts for products sold by ADC[SC].

AR 2376.

6

VA, ADCI/ADCSC and APOC considered establishing separate FSS contracts with ADCI and APOC, but elected to continue, out of administrative convenience, selling ADCI and APOC's products on ALI's FSS contract. AR 2376. Accordingly, Mr. Williams stated that although "the ALI-executed contract is the only contract through which users of the FSS can order diabetes care products from ADC[SC]," AR 2377, ALI's FSS contract authorized various Abbott-affiliated employees—including Mr. Williams—to quote prices and tender bids "for the purpose of establishing a Blanket Purchase Agreement . . . under the FSS contract." AR 2376.

Stephanie Organ, in her declaration on behalf of ALI, stated that Mr. Williams "was authorized to negotiate pricing under the FSS Contract on behalf of ALI, including through a subsequent Blanket Purchase Agreement established under the FSS." AR 2378. However, she also confirmed that the FSS contract "was executed in the name of ALI," and that the BPA "price quote that was submitted to and ultimately accepted by the Defense Health Agency on November 12, 2013 . . . was executed in the name of ADC[SC]" and "does not specifically mention ALI by name . . . ." AR 2378-79.

Based on the aforementioned evaluation, the Contracting Officer determined that "ADCSC was authorized to submit a BPA quote under the FSS contract listed in their quote, V797P-2032D, and therefore, as a practical matter, ADCSC possessed, and could properly hold itself out as having an FSS contract for all of the pharmaceutical agents quoted . . . ." AR 2227. In the alternative, the Contracting Officer concluded that the solicitation did not prohibit offerors from relying on the resources of their corporate

7

agreement, and, thus, DHA "could properly rely upon ADCSC's implicit representations that ALI would support [ADCSC's] performance." AR 2228.

The Contracting Officer concluded his decision on remand by noting that there was "no reason to question ADCSC's ability to deliver the quoted strips at the quoted pricing . . . because of ALI's history of performance." Id. This conclusion was further consistent, the Contracting Officer stated, with the contractual commitment of ADCSC and ALI, as well as the representations made in Mr. Williams' letter and the declaration from Stephanie Organ. Id.

## II. DISCUSSION

It is well-established that an award may be set aside as arbitrary and capricious where the procurement procedure involved a clear violation of regulation or procedure. Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009); Galen Med. Assocs. v. United States, 369 F.3d 1324, 1331 (Fed. Cir. 2004). Additionally, it is undisputed that an offeror must be a "schedule contractor" to be eligible to enter into a BPA against an FSS contract.[4] See, e.g., 42 C.F.R. § 8.405–3(a)(1) ("Ordering activities

---

[4] Plaintiff correctly notes that the GAO has also concluded that the FAR requires FSS BPA awardees to be FSS contract holders. See Canon USA, Inc., B-311254.2, 2008 CPD ¶ 113, at *3 (Comp. Gen. June 10, 2008) (to establish an FSS BPA, "the vendor must have a valid FSS contract in place because that contract is the means by which the agency satisfies the competition requirements of CICA"). In this connection, the government's reliance on AINS, Inc., B-400760.2, 2009 CPD ¶ 142 (Comp. Gen. June 12, 2009) and Altos Fed. Grp., Inc., B-294120, 2004 CPD ¶ 172 (Comp. Gen. July 28, 2004), is completely misplaced.

In AINS, Inc., the GAO denied a protest involving nearly identical facts as the case at bar, with one crucial difference: the agency engaged in corrective action to rescind the initial BPA so that the agency could enter into a new BPA with the original awardee's affiliate who was the FSS contract holder. AINS, Inc., B-400760.2, 2009 CPD ¶ 142. Altos Fed. Grp., Inc., 2004 CPD ¶ 172, is also distinguishable, as the contractor that signed the BPA was an FSS contract holder for

shall establish the BPA <u>with the schedule contractor(s)</u>" (emphasis added)); 42 C.F.R. § 8.402(b); 42 C.F.R. § 8.404(a) ("when establishing a BPA . . . ordering activities shall not seek competition outside of the Federal Supply Schedules . . . ."). It is also not disputed that, consistent with the FAR, the BPA solicitation stated that "[t]he Company must have an existing FSS Contract for any pharmaceutical agent(s) quoted in this UFBPA at the time the quote is submitted, and at the time the UFBPA is executed." AR 118. ARKRAY argues that the award is arbitrary and capricious because the BPA was awarded to an offeror that admittedly did not (and does not) have an FSS contract and that ADCSC's rights under ALI's FSS contract are irrelevant to the question of ADCSC's eligibility to receive a BPA against an FSS contract.

Given that the government and defendant-intervenor concede that ADCSC is a separate legal entity from ALI and ADCI, the court agrees with ARKRAY that whether ADCSC was eligible for award of the BPA turns on whether the Contracting Officer correctly concluded that ADCSC was ALI's agent and could enter into the BPA on ALI's behalf or could otherwise rely on ALI's FSS to satisfy the FSS requirement.

---

at least some of the items listed on the BPA. 2004 CPD ¶ 172, at *3 ("an FSS contractor acting as a prime contractor may use a subcontractor to provide services not included within the prime contractor's FSS contract so long as the services in question are included within the subcontractor's FSS contract."). Here, it is undisputed that ADCSC does not hold <u>any</u> FSS contract.

### a. The Contracting Officer's Conclusion that ADCSC Was Eligible to Enter into the BPA Because ADCSC Was Acting on Behalf of ALI Was Arbitrary and Capricious

The government and defendant-intervenor contend that the Contracting Officer's decision is consistent with the solicitation and FAR because ADCSC was authorized, through Duncan Williams, to negotiate on behalf of ALI with regard to ALI's FSS contract. The government goes so far as to state that Mr. Williams was actually acting on behalf of ALI, Def.'s Suppl. Br. 7 n.2, 8, and that Mr. Williams failure to "explicitly invoke" ALI's name constitutes a non-material defect in the award that can be cured. Id. at 9-10 n.3. In this connection, the government relies on Am. Anchor & Chain Corp. v. United States, 331 F.2d 860, 861 (Ct. Cl. 1964), for the proposition that Mr. Williams could and did act as ALI's agent when he signed the BPA quote. As explained below, however, the government's agency theory is unsupported by the record evidence, to include Mr. Williams' letter in response to the Contracting Officer, Ms. Organ's carefully worded declaration, and the BPA quote itself. Accordingly, the court concludes that the Contracting Officer's decision to award a BPA to ADCSC on the grounds that it was ALI's agent was arbitrary and capricious.

The record reflects that Duncan Williams was not actually acting as an agent on behalf of ALI when he signed the BPA quote. While it is no doubt true that he was authorized to offer items from ALI's FSS contract, this authorization does not, in and of itself, make ALI the BPA awardee or ADCSC the FSS contract holder. Notably, rather than state that he signed the BPA on behalf of ALI, Mr. Williams' letter to the Contracting Officer focuses on ADCSC's rights under ALI's FSS contract. AR 2377.

Moreover, the fact that Mr. Williams stated that he "considered" ALI's FSS contract to actually be ADCSC's contract is undermined by his admission that the VA had considered and purposefully declined to enter into a separate FSS contract with ADCSC out of "administrative convenience."  AR 2376.

Ms. Organ's carefully worded declaration further demonstrates that Mr. Williams did not execute the BPA on behalf of ALI.  Although she acknowledges that ALI would agree to be bound by the price offered by ADCSC, nowhere does she state—or even suggest—that ADCSC was acting on behalf of ALI when it offered the BPA quote.  See AR 2379 ("The BPA price quote was executed in the name of ADC[SC].").  That Mr. Williams was not acting as ALI's agent is further confirmed by the fact that he signed the BPA in his capacity as "Division [Vice President], US [Commercial Operations[,] <u>Abbott Diabetes Care Sales Corporation Inc.</u>" AR 227 (emphasis added).[5]

In light of the foregoing, the mere fact that ADCSC listed ALI's FSS contract number in its bid is insufficient to show that Mr. Williams entered into a BPA as an agent on behalf of ALI, or that ADCSC held an FSS contract.  See <u>Am. Anchor & Chain Corp.</u>, 331 F.2d at 861 (agent binds principal by taking actions <u>on behalf</u> of principal).  Accordingly, the government's argument that ADCSC satisfied FAR 8.405–3 by acting as ALI's agent is rejected, and the Contracting Officer's conclusion that ADCSC—as the BPA awardee—satisfied the FSS requirement was arbitrary and capricious.

---

[5] The government's contention that the BPA signature page "does not indicate on whose behalf [Mr. Williams] was signing," Def.'s Suppl. Resp. 9, is simply wrong.  Mr. Williams listed his title as that of an ADCSC vice president.  AR 227.

11

### b. The Contracting Officer's Alternative Conclusion that ADCSC Could Rely on ALI's FSS Contract Was Arbitrary and Capricious

In the alternative, the government and defendant-intervenor contend that, regardless of whether ADCSC was ALI's actual agent, the relationship between ADCSC and ALI was sufficiently close to allow ADCSC to rely on ALI's FSS contract to satisfy the terms of the solicitation and FAR 8.405–3. The government and ADCSC rely on T & S Prods., 48 Fed. Cl. 100, and Femme Comp, 83 Fed. Cl. 704, for the uncontested proposition that a contractor in certain circumstances may rely upon an affiliated entity to meet solicitation requirements. The court finds that ADCSC's reliance on ALI's FSS contract is different from the reliance at issue in those cases because here ADCSC's reliance is foreclosed by both the FAR and the terms of the solicitation.

T & S Prods. and Femme Comp stand for the proposition that absent a term in the solicitation that prohibits offerors from relying on their corporate affiliates, a contracting officer has discretion to take offerors at their word that the resources of their affiliates will be made available. In T & S Prods., a protester challenged an award on the ground that the evaluators assessed the awardee's proposal based, at least partly, on the capabilities of the awardee's parent company. 48 Fed. Cl. at 109. Although the awardee's proposal described how it would leverage its "Retail Support Center," "Warehouse Management System," and dedicated sales force in meeting the solicitation's requirements, in reality these resources were owned or controlled by the awardee's parent company. See id. at 108, 111. In denying the protest, the court recognized the "well[-]established principle that a parent corporation and a subsidiary are in law separate and

distinct entities." Id. at 111 (quoting BLH, Inc. v. United States, 13 Cl. Ct. 265, 272 (1987)).  Nevertheless, the court held that absent contrary language in the solicitation, "where an offeror represents in its proposal that resources of its parent company will be committed to the contract, the agency properly may consider such resources in evaluating its proposal."  Id. (citations omitted).  In Femme Comp, the court adopted the same rule, and held that the fact that the awardee did not expressly list its affiliates as subcontractors was immaterial where there was "no requirement that an offeror must designate its affiliated corporations as subcontractors in order to officially commit their resources to the performance of a contract."  83 Fed. Cl. at 747.

In contrast to the reliance at issue in T&S Prods. and Femme Comp, ADCSC's reliance on ALI's FSS contract is clearly prohibited by FAR 8.405–3 and the plain language of the solicitation.  As explained above, the FAR and the solicitation prohibit DHA from entering into an FSS BPA with a non-schedule contractor.  See, e.g., 48 C.F.R. § 8.405–3(a)(1) (BPAs shall be established with schedule contractors); AR 225 (offerors "must have an existing FSS Contract for any pharmaceutical agent(s) quoted").  Accordingly, regardless of whether procurement officials generally have discretion to allow offerors to rely on their affiliates' performance history or expertise to meet solicitation requirements, the Contracting Officer in this case did not have discretion to ignore the clear regulatory requirements in the FAR or terms of the solicitation.  See Centech Grp., Inc. v. United States, 554 F.3d 1029, 1039 (Fed. Cir. 2009) (agency could not, through policy memorandum, alter statutory or regulatory requirements).  Thus, the fact that ADCSC is authorized to offer supplies from the ALI FSS contract and that ALI

13

will agree to the price ADCSC offered does not eliminate the legal defect in the BPA award.  Accordingly, the Contracting Officer's decision to allow ADCSC to rely on ALI's FSS contract is arbitrary and capricious.

### c.  ARKRAY Was Prejudiced by the Contracting Officer's Error

The court also concludes that ARKRAY has carried its burden of demonstrating that it was prejudiced by the Contracting Officer's error.  Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 908 (Fed. Cir. 2013) (to prevail in bid protest, error must be prejudicial); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) (protester must demonstrate that "had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract").  In its initial cost-effectiveness review, the P&T Committee concluded that "[t]here are no clinically relevant differences between the . . . test strips" offered by the seven manufacturers that met the final technical and contracting requirements.  AR 571.  The P&T Committee also concluded that ADCSC's strips reflected the most cost-effective among the offerors, followed by ARKRAY.  Id.  Thus, ARKRAY's test strips were the highest rated test strips after ADCSC's.

The court cannot agree with defendant-intervenor that "any harm to Plaintiff would result not from [the BPA] award, but from the DHA formulary decision effectively making [ADCSC] the sole provider of test strips to DHA beneficiaries."  Intervenor's Reply 18, ECF No. 71.  In connection with the BPA award, the Contracting Officer was supposed to submit only those bids to the P&T Committee that complied with the FAR. See AR 1819 (Contracting Officer's statement that he was required to reject irregular

14

bids "unless the irregularity can be resolved prior to forwarding the quote to be evaluated for cost effectiveness").[6] Although it is possible that the Contracting Officer might have encouraged ADCSC and ALI to resolve the FSS issue prior to forwarding quotes to the P&T Committee, the court has no basis in the record to reach such a conclusion.[7] Had Abbott-branded test strips not been considered by the P&T Committee, however, it appears certain that ARKRAY's strips would have had a reasonable chance of being included on the formulary. Moreover, given ARKRAY's cost-effectiveness relative to the other offerors, it appears reasonably likely that ARKRAY would have received a BPA award. Accordingly, the court concludes that ARKRAY has satisfied its burden of demonstrating prejudice. Glenn Def. Marine, 720 F.3d at 912 (plaintiff must show "substantial chance it would have received the contract" but for agency's error).

### d. ARKRAY is Entitled to Injunctive Relief

Plaintiff seeks, inter alia, an injunction setting aside the BPA award to ADCSC. The decision to issue an injunction setting aside an award falls within the discretion of the trial court. PGBA, LLC v. United States, 389 F.3d 1219, 1232 (Fed. Cir. 2004).[8] Nevertheless, injunctive relief is an extraordinary remedy that this court should award "in a way that best limits judicial interference in contract procurement." Cardinal Maint.

---

[6] Because the Contracting Officer did not undertake corrective action of this nature during the remand, the court has no occasion to decide whether doing so would have been proper.

[7] See AINS, Inc., B-400760.2, 2009 CPD ¶ 142. Indeed, in this case the DHA Contracting Officer stated that he had authority to resolve irregularities in quotes prior to forwarding them for cost effectiveness reviews or entering into a BPA(s). See AR 1819.

[8] The court looks to the traditional equitable factors in evaluating plaintiff's request for declaratory and injunctive relief. See PGBA, 389 F.3d at 1228.

Serv., Inc. v. United States, 63 Fed. Cl. 98, 110 (2004) (quoting Parcel 49C Ltd. P'ship v. United States, 31 F.3d 1147, 1153 (Fed. Cir. 1994)).  When deciding whether to issue a permanent injunction setting aside an award, the court considers whether "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief."  Centech Grp., Inc. v. United States, 554 F.3d at 1037.  The decision to grant injunctive relief requires a careful balancing of these factors, and "the weakness of the showing regarding one factor may be overborne by the strength of the others."  FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir.1993).

Looking to the first factor, ARKRAY has demonstrated success on the merits by showing that the Contracting Officer clearly violated the solicitation and FAR 8.405–3 by awarding a BPA to ADCSC, a non-schedule contractor.  This factor weighs in favor of ARKRAY.

Turning to the second factor, ARKRAY argues that it will suffer irreparable harm if the court withholds injunctive relief due to lost profits and denial of "the opportunity to compete for the BPA on a level playing field."  Pl.'s Resp. & Reply 43, ECF No. 64.  Defendant-intervenor responds that plaintiff has provided no allegations or evidence that ARKRAY would have profited from the BPA, particularly in light of the discounts ARKRAY's quote offered off of its FSS prices.  Intervenor's Reply 18-19, ECF No. 71.  Although some decisions of this court have refused to find irreparable harm absent clear and convincing evidence of lost profits, CSE Const. Co. v. United States, 58 Fed. Cl. 230,

262 (2003), others have found an irreparable injury due to the loss of an opportunity to have its bid "fairly and lawfully considered," Klinge Corp. v. United States, 82 Fed. Cl. 127, 138 (2008); Cardinal Maint. Serv., 63 Fed. Cl. at 110 ("Irreparable injury includes, but is not limited to, lost profits which would flow from the contract.").

Applying this standard to the case at bar, there can be little question that DHA's decision to effectively sole-source test strips to ADCSC will deny ARKRAY any opportunity to compete for as much as $166.5 million in revenue over the next five years.[9]  Compl. ¶ 8.  For this reason, notwithstanding the fact that ARKRAY's profit margins are not evident from the record, the court concludes that the denial of a fair opportunity to compete for potential profits and substantial revenue constitutes irreparable harm.

Although ARKRAY would suffer potentially irreparable harm absent an injunction, the court must balance this harm against the potential harm to DHA and the awardee.  See PGBA, 389 F.3d at 1231; BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 514 (2013).  Setting aside the award in this case would not deny

---

[9] Indeed, some commentators have noted that the VA's use of BPAs can effectively shut out contractors from the VA market:

> Unfortunately, the prevalent use of national BPAs arguably makes the consideration underlying other contractors' FSS contracts without BPAs somewhat illusory. . . . [A] policy of requiring purchases under a BPA modification to one FSS contractor does not simply impede a competing FSS contractor's ability to sell to the agency; it eliminates the market opportunity—the benefit—for which that schedule contractor bargained.

Donna Lee Yesner, Stephen Ruscus, Selling Medical Supplies and Services Through the Department of Veterans Affairs Federal Supply Schedule Program, 37 Pub. Cont. L.J. 489, 496 (2008).

17

TRICARE beneficiaries from receiving test strips because test strips are presently available through a different contract (albeit at a higher price) with ADCSC and other manufacturers.  The government has, however, indicated that it will save as much as $64.8 million per year by implementing the P&T Committee's recommendation to transition entirely to ADCSC's test strips.  Def.'s Cross-Mot. 51.  Elsewhere in its briefing, the government contends that it will save $5 million per month.  Def.'s Reply 36, ECF No. 70.  Defendant-intervenor claims that the government will lose over $3.1 million per month.  Intervenor's Reply 19.   It is not disputed that the government will save money under the new BPA.  Plaintiff argues, however, that the government's cost savings are not sufficient to tip the balance of hardships in its favor, where any delay in cost savings is due to the government's own mistakes in the procurement process.  The court agrees with plaintiff that although the financial cost is not insubstantial, the government and defendant-intervenor have not demonstrated any special consequence to delaying the BPA award.  See PGBA, 389 F.3d at 1231; BCPeabody, 112 Fed. Cl. at 514.  Accordingly, the government and intervenor have failed to show that the balance of hardships weighs in their favor.

Finally, the court turns to the matter of the public interest.  It is well-established that "[t]here is an overriding public interest in preserving the integrity of the procurement process by requiring the government to follow its procurement regulations."  Turner Const. Co. v. United States, 94 Fed. Cl. 561, 586 (2010), aff'd, 645 F.3d 1377 (Fed. Cir. 2011).  There is also a public interest in ensuring that test strips remain available.  Here, TRICARE beneficiaries have continued to receive their test strips throughout the protest

period, and there is no reason to doubt that they will continue to receive test strips while the agency takes action to correct its prior errors.  On this record the public interest favors ARKRAY.

The court has considerable discretion in fashioning relief in a bid protest.  28 U.S.C. § 1491(b)(2) ("To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs."); CNA Corp. v. United States, 83 Fed. Cl. 1, 10-11 (2008), aff'd, 332 F. App'x 638 (Fed. Cir. 2009) (award may include both injunctive relief and bid preparation costs).  Having considered all four factors, the court concludes that a permanent injunction setting aside DHA's BPA with ADCSC is warranted.  The court declines to provide additional instruction to DHA regarding further actions in this procurement.

### III.  CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the administrative record and for an injunction is **GRANTED**.  The government's and defendant-intervenor's cross-motions are **DENIED**.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge